## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIC J. FLANNERY, and DRANE FLANNERY RESTAURANT, LLC, T/A THE BIG BOARD, <br><br> 511 ½ 8th Street NE <br> Washington, DC 20002 <br><br> PLAINTIFFS, <br><br> v. <br><br> DISTRICT OF COLUMBIA DEPARTMENT OF HEALTH, and LAQUANDRA S. NESBITT, Director, in her official capacity, <br><br> 899 North Capitol Street NE <br> Washington, DC 20002 <br><br> DEFENDANTS. | CIVIL ACTION NO. 1:22-cv-3108 |

## COMPLAINT

Plaintiff Eric J. Flannery, owner and operator of Plaintiff Drane Flannery Restaurant, LLC, T/A The Big Board ("The Big Board"), brings this civil action against Defendants District of Columbia Department of Health ("DC Health") and LaQuandra S. Nesbitt, its director, for declaratory relief and damages and alleges as follows:

### INTRODUCTION

1.      Since COVID-19 emerged in early 2020, District of Columbia Mayor Muriel Bowser has issued more than a dozen "emergency" executive orders over a two-year period in response to the pandemic. These orders have imposed and modified a variety of restrictions on people, schools, businesses, and government offices. These "emergency" orders have been issued without review by the D.C. Council or the United States Congress, and they have touched all aspects of civic life during the last two years.

2.      To purportedly authorize the Mayor to issue "emergency" orders, the D.C. Council issued a series of 90-day emergency amendments (acts), none of which were subject to congressional review. *See* D.C. Code § 7–2306.

3.      In late 2021, Mayor Bowser issued two "emergency orders" imposing an indoor mask requirement (including at bars and restaurants), Mayor's Order 2021-147, 68 D.C. Reg. 13954 (Dec. 20, 2021), and proof of vaccination requirement, Mayor's Order 2021-148, 68 D.C. Reg. 14222 (Dec. 22, 2021). Both orders were issued for an initial 60-day period.

4.      In response to these orders, DC Health took immediate action to issue a summary suspension of The Big Board's license and shutter the business in February 2022 for alleged violations of the Mayor's indoor mask and proof of vaccination requirements. Among other penalties, The Big Board paid a $100 restoration fee to obtain permission from DC Health to re-open following the Mayor's decision to lift the vaccination requirement effective February 15 and the indoor mask requirement effective March 1. 69 D.C. Reg. 1376 (Feb. 14, 2022) (Mayor's Order 2022-029).

5.      DC Health's suspension of The Big Board's license violated federal law governing the District of Columbia's authority to pass ordinances and other laws. Specifically, the District of Columbia's Home Rule Act—which delegates Congress's exclusive authority to legislate over the District pursuant Article I, Section 8 of the U.S. Constitution—generally requires that legislation enacted by the D.C. Council be submitted to Congress for a 30-day review period, during which Congress may take action to disapprove and invalidate legislation. *See* D.C. Code § 1–206.02(c)(1). The only exception to this requirement is for emergency legislation, but in such case the legislation "shall be effective for a period of not to exceed 90 days." D.C. Code § 1–204.12(a).

6.     The Mayor's rolling "emergency" orders authorized by the D.C. Council's successive emergency amendments make a mockery of this constitutional requirement. The repeated extension of emergency orders for months on end, authorized by the D.C. Council's emergency legislation—which was not approved by Congress—have thwarted Congress's reserved constitutional power under D.C. Code § 1–206.02(c)(1). As a result, the Mayor's Orders upon which the DC Health suspension and fines relied are *ultra vires*, and the suspension and the fines themselves, are *ultra vires*, null, and void.

7.     The penalties levied on The Big Board by DC Health, including the restoration fee paid by The Big Board as a condition on the reinstatement of its license, was therefore unlawful. Plaintiffs thus seek declaratory relief and the return of that fee and other any other costs or fees assessed by DC Health as a result of the Mayor's orders.

## PARTIES

8.     Plaintiff Drane Flannery Restaurant, LLC is the owner of the restaurant known, and operated as The Big Board, a restaurant and bar located in Washington, D.C.

9.     Plaintiff Eric J. Flannery is an owner of Drane Flannery Restaurant, LLC and is an operator of The Big Board.

10.     Defendant DC Health is a subordinate agency of the government of the District of Columbia, a municipal corporation.

11.     Defendant LaQuandra S. Nesbitt is the Director of DC Health, and is sued in her official capacity.

## JURISDICTION & VENUE

12.     This Court has subject-matter jurisdiction over this case because it arises under the U.S. Constitution and laws of the United States. 28 U.S.C. §§ 1331, 2201. And because Plaintiffs

- 3 -

bring this suit to vindicate the deprivation of "rights, privileges, or immunities secured the Constitution," 42 U.S.C. § 1983, this Court also has jurisdiction under 28 U.S.C. § 1343.

13.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 regarding the D.C. Administrative Procedure Act.

14.     Venue is proper because DC Health resides in this District and a substantial part of the events or omissions giving rise to the claims occurred here. 28 U.S.C. § 1391(b)(1)-(2).

15.     Declaratory relief is authorized by 28 U.S.C. § 2202.

## BACKGROUND

### I.     Congress retains ultimate legislative authority over the District of Columbia via the Home Rule Act.

16.     The United States Constitution vests in Congress the power to "exercise exclusive Legislation in all Cases whatsoever, over" the District of Columbia. U.S. Const. art. I, § 8, cl. 17.

17.     In 1973, Congress enacted the Home Rule Act to balance congressional oversight with local authority over the District of Columbia. D.C. Code § 1–201.01. The Home Rule Act sets forth the District of Columbia Charter, which created and organized the D.C. Council, D.C. Mayor's office, and various government agencies. D.C. Code § 1–204.01-96.

18.     The Home Rule Act also grants the District government limited legislative powers subject to Congress's retention of ultimate authority over the District. *See* D.C. Code § 1–201.02 ("Subject to the retention by Congress of the ultimate legislative authority over the nation's capital granted by article I, § 8, of the Constitution, the intent of Congress is to delegate certain legislative powers to the government of the District of Columbia; authorize the election of certain local officials by the registered qualified electors in the District of Columbia;" and, among other purposes, "consistent with the constitutional mandate, relieve Congress of the burden of legislating upon essentially local District matters.").

19.     The District of Columbia's Home Rule Act requires that legislation enacted by the D.C. Council be submitted to Congress for a 30-day review period, during which Congress may take action to disapprove and invalidate legislation. *See* D.C. Code § 1–206.02(c)(1). This is no mere formality; Congressional review is key to preserving Congress's exclusive authority to legislate over the District pursuant Article I, Section 8 of the U.S. Constitution. *See Bliley v. Kelly*, 23 F.3d 507, 508 (D.C. Cir. 1994) (noting that "the Home Rule Act allows Congress a layover period of thirty statutory days to review legislation submitted by the D.C. Council").

20.     There is an exception to this requirement for emergency legislation, but in such case the legislation "shall be effective for a period of not to exceed 90 days." D.C. Code § 1–204.12(a).

21.     The D.C. Council has, in turn, authorized the Mayor through successive emergency legislation to extend her own emergency orders for months on end. *See* D.C. Code § 7–2306(c-1), (c-2).

22.     In making a limited exemption for legislation that was only to be effective for 90 days, Congress did not, explicitly or implicitly, authorize action by the D.C. Council and executive to escape Congressional review for years on end.

II.     **The D.C. Council's and Mayor's end run around the Home Rule Act.**

23.     On March 11, 2020, the Mayor issued a pair of orders declaring a public emergency and public health emergency due to the COVID-19 pandemic. 67 D.C. Reg. 2956 (Mar. 11, 2020) (Mayor's Order 2020-045); 67 D.C. Reg. 2961 (Mar. 11, 2020) (Mayor's Order 2020-046). Each order was set to expire "fifteen (15) days after its effective date, unless earlier rescinded or suspended." 67 D.C. Reg. 2956, 2960 (Mar. 11, 2020) (Mayor's Order 2020-045 § III); 67 D.C. Reg. 2961, 2962 (Mar. 11, 2020) (Mayor's Order 2020-046 § III).

24.     On March 16, 2020, the Mayor issued a "prohibition on mass gatherings." 67 D.C. Reg. 3312 (Mar. 16, 2020) (Mayor's Order 2020-048). This emergency executive order further ordered that "Restaurants and Taverns licensed in the District of Columbia shall suspend table seating effective March 16, 2020, at 10:00 PM until April 1, 2020, at 6:00 AM." 67 D.C. Reg. 3312, 3314 (Mar. 16, 2020) (Mayor's Order 2020-048 § 1(C)).

25.     On March 17, 2020, the D.C. Council issued its first emergency, "temporary" (90-day) amendment to authorize the Mayor to extend her emergency orders for an additional period beyond the typical 15 days permitted by the D.C. Code. *See* § 301(b) of COVID-19 Response Emergency Amendment Act of 2020, D.C. Act 23-247, 67 D.C. Reg. 3093, 3099 (Mar. 17, 2020).

26.     The D.C. Council's first emergency, temporary amendment created subsection (c-1) to D.C. Code § 7–2306:

> Notwithstanding subsections (b) and (c) of this section, the Council authorizes the Mayor to extend the 15-day March 11, 2020, emergency executive order and public health emergency executive order ("emergency orders") issued in response to the coronavirus (COVID-19) for an additional 30-day period.

D.C. Code § 7–2306(c-1) (as amended Mar. 17, 2020).

27.     Over the span of two years, the D.C. Council issued 15 emergency, "temporary" (90-day) amendments[1] to D.C. Code § 7–2306, which now reads:

---

[1] (a) The D.C. Council's 15 acts of emergency, "temporary" legislation to amend D.C. Code § 7–2306 are: § 301(b) of COVID-19 Response Emergency Amendment Act of 2020, D.C. Act 23-247, 67 D.C. Reg. 3093, 3099 (Mar. 17, 2020); § 507(c) of Coronavirus Support Emergency Amendment Act of 2020, D.C. Act 23-326, 67 D.C. Reg. 7045, 7107 (May 27, 2020); § 507(c) of Coronavirus Support Congressional Review Emergency Amendment Act of 2020, D.C. Act 23-328, 67 D.C. Reg. 7598, 7654 (June 8, 2020); § 2 of Public Health Emergency Authority Additional Extension Emergency Amendment Act of 2020, D.C. Act 23-411, 67 D.C. Reg. 11513 (Oct. 5, 2020); § 301(a) of Protecting Businesses and Workers from COVID-19 Congressional Review Emergency Amendment Act of 2020, D.C. Act 23-483, 67 D.C. Reg. 13860, 13865 (Nov. 16, 2020); § 2 of Coronavirus Public Health Extension Emergency Amendment Act of 2020, D.C. Act 23-524, 67 D.C. Reg 14747 (Dec. 18, 2020); § 4(a) of Coronavirus Public Health Extension Emergency Amendment Act of 2020, D.C. Act 23-524, 67 D.C. Reg 14747, 14749 (Dec. 18, 2020); § 2 of January 2021 Public Emergency Extension Authorization Emergency Amendment Act of 2021, D.C. Act 24-1, 68 D.C. Reg. 1525 (Jan. 15, 2021); § 507(d) of Coronavirus Support Emergency Amendment Act of 2021, D.C. Act 24-30, 68 D.C. Reg. 3101, 3158 (Mar. 17, 2021); § 2 of Coronavirus Public Health Extension Emergency Amendment Act of 2021, D.C. Act 24-79, 68 D.C. Reg. 5600 (May 19, 2021); § 2 of Public Emergency Extension and Eviction and Utility Moratorium Phasing Emergency Amendment Act of 2021, D.C. Act 24-125, 68 D.C. Reg.

Notwithstanding subsections (b) and (c) of this section, the Council authorizes the Mayor to extend the 15-day March 11, 2020, emergency executive order (Mayor's Order 2020- 045) issued in response to the novel 2019 coronavirus (SARS CoV-2) *until April 16, 2022*. After the extension authorized by this subsection, the Mayor may extend the emergency order for additional 15-day periods pursuant to subsection (b) or (c) of this section.

D.C. Code § 7–2306(c-1) (as amended Mar. 16, 2022) (emphasis added).

28.     The official version of the statute states that "[t]his section includes amendments by temporary legislation that will expire on October 26, 2022" and it remains in effect as of the date of this filing.

29.     Through the use of emergency amendments to evade congressional review, the D.C. Council ultimately extended the Mayor's authority to likewise sidestep review and keep the Mayor's "emergency" orders in place for a period exceeding two years—until at least April 16, 2022. And the Mayor took full advantage of the D.C. Council's grant of authority, even if the Council lacked the authority to extend it in the first instance.

30.     On March 20, 2020, relying on the D.C. Council's amendment to D.C. Code § 7–2306, the Mayor issued the first extension of her declaration of a public emergency and public health emergency. 67 D.C. Reg. 3601 (Mar. 20, 202) (Mayor's Order 2020-050).

---

7342, 7343 (July 24, 2021); § 3 of Foreclosure Moratorium Extension, Scheduled Eviction Assistance, and Public Emergency Extension Emergency Amendment Act of 2021, D.C. Act 24-178, 68 D.C. Reg. 10692, 10693 (Oct. 7, 2021); § 2 of Public Emergency Extension Emergency Amendment Act of 2021, D.C. Act 24-276, 69 D.C. Reg. 214 (Jan. 6, 2022); § 2 of Public Health Emergency Extension Emergency Amendment Act of 2022, D.C. Act 24-313, 69 D.C. Reg. 850 (Jan. 26, 2022); § 2 of Public Emergency Extension Emergency Amendment Act of 2022, D.C. Act 24-346, 69 D.C. Reg. 2614 (Mar. 16, 2022).

(b) The D.C. Council's second amendment, in § 507(c) of Coronavirus Support Emergency Amendment Act of 2020, D.C. Act 23-326, 67 D.C. Reg. 7045, 7107 (May 27, 2020), actually authorized the Mayor to extend her March 11, 2020 executive orders "for an additional 135-day period" by tacking on a new 90 days to the 45 days remaining under the first amendment's extension. This act, in and of itself, violated the D.C. Home Rule Act's 90-day limit for emergency legislation. *See* D.C. Code § 1–204.12(a). Nevertheless, the successive extensions, all of which evaded congressional review, authorized the Mayor to issue new orders (or extensions) for a period exceeding two years.

31.     The Mayor extended her initial public emergency declaration seven times during 2020 alone. *Id.*; 67 D.C. Reg. 4410 (Apr. 15, 2020) (Mayor's Order 2020-63); 67 D.C. Reg. 5173 (May 13, 2020) (Mayor's Order 2020-66); 67 D.C. Reg. 5612 (May 27, 2020) (Mayor's Order 2020-67); 67 D.C. Reg. 9101 (July 22, 2020) (Mayor's Order 2020-79); 67 D.C. Reg. 11802 (Oct. 7, 2020) (Mayor's Order 2020-103); 67 D.C. Reg. 14986 (Dec. 18, 2020) (Mayor's Order 2020-127). The Mayor has since issued successive orders that extended the public emergency declaration throughout the entirety of 2021 (seven extensions under 68 D.C. Reg. 945 (Jan. 11, 2021) (Mayor's Order 2021-004); 68 D.C. Reg. 2943 (Mar. 17, 2021) (Mayor's Order 2021-038); 68 D.C. Reg. 4664 (Apr. 26, 2021) (Mayor's Order 2021-060); 68 D.C. Reg. 5033 (May 1, 2021) (Mayor's Order 2021-066); 68 D.C. Reg. 5480 (May 17, 2021) (Mayor's Order 2021-069); 68 D.C. Reg. 7595 (July 24, 2021) (Mayor's Order 2021-096); 68 D.C. Reg. 13954 (Dec. 20, 2021) (Mayor's Order 2021-147)) and through April 16, 2022 (two extensions in 2022 under 69 D.C. Reg. 335 (Jan. 6, 2022) (Mayor's Order 2022-007); 69 D.C. Reg. 2503 (Mar. 17, 2022) (Mayor's Order 2022-043)). *See* Mayor's Order 2022-043 § I(2) ("The District has been in a state of public emergency since March 11, 2020"); § I(8) ("This Mayor's Order extends the public emergency through April 16, 2022."). All told, the Mayor has extended her initial public emergency declaration at least 16 times by blanketing successive orders over a two-year period.

32.     Although the Mayor terminated the public health emergency effective July 25, 2021, Mayor's Order 2021-096, she reinstituted a new public health emergency declaration on January 11, 2022, 69 D.C. Reg. 338 (Jan. 11, 2022) (Mayor's Order 2022-008), and extended it later that month, 69 D.C. Reg. 768 (Jan. 26, 2022) (Mayor's Order 2022-019).

33.     During this time, the Mayor imposed and extended scores of additional orders for restrictions in the name of the continuous emergency. These related orders include the mask and

vaccination requirements that underpin The Big Board's license suspension. *See, e.g.*, Mayor's Order 2021-147 (indoor mask requirement); Mayor's Order 2022-018 (extending "the indoor masking requirements set forth in Mayor's Order 2021-147").

### III.   DC Health's unlawful suspension of The Big Board's license.

34.     On February 1, 2022, DC Health issued a "Notice of Infraction" and "Notice of Closure/Summary Suspension" (the "Summary Suspension," Exhibit A) to The Big Board for alleged violations of D.C. Code § 7–2307. Specifically, the Summary Suspension alleged that The Big Board violated Mayor's Order 2021-147 (imposing an indoor mask requirement, which "applies in ... restaurants and taverns when persons are not actively eating or drinking"), Mayor's Order 2021-148 ("restaurants and taverns ... shall not permit a guest, visitor, or customer over twelve (12) years old to enter their indoor premises without displaying proof of vaccination against COVID-19"), and Mayor's Order 2022-007 (clarifying that "[t]he vaccination entry requirements of Mayor's Order 2021-148 ... shall apply to persons twelve (12) years of age and older" and "[p]ersons eighteen (18) years and older who are subject to the vaccination requirement of Mayor's Order 2021-148 shall be required to provide proof of their identity with their proof of vaccination").

35.     The Summary Suspension alleged that, at 5:07 pm on February 1, 2022, The Big Board, "[i]n violation of Mayor's Order 2021-148 §II(I) ... permitted a guest, visitor, or customer over twelve (12) years old to enter their indoor premises without displaying proof of vaccination against COVID-19." Ex. A at 1. Additionally, the Summary Suspension alleged that, at 5:07 pm on February 1, 2022, The Big Board, "[i]n violation of Mayor's Order 2021-147 §IV(I) ... did not require all persons to wear mask indoors when not actively eating or drinking." Ex. A at 1.

36.     The Summary Suspension also imposed fines of $1,000 for each alleged violation of D.C. Code § 7–2307, totaling $2,000 in fines.

37.     Plaintiffs suffered other damages as a result of the Summary Suspension.

38.     On February 7, 2022, DC Health issued a separate "Notice of Infraction" (the "February 7 Notice," Exhibit B) to The Big Board for similar violations of D.C. Code § 7–2307. The February 7 Notice alleged that, at 5:37 pm on January 21, 2022, The Big Board, "[i]n violation of Mayor's Order 2021-148 §II(I) ... permitted a guest, visitor, or customer over twelve (12) years old to enter their indoor premises without displaying proof of vaccination against COVID-19." Ex. B at 2. The February 7 Notice further alleged that, at 5:37 pm on January 21, 2022, The Big Board "[i]n violation of Mayor's Order 2021-147 §IV(I) ... did not require all persons to wear mask indoors when not actively eating or drinking." Ex. B at 2.

39.     The February 7 Notice imposed fines of $1,000 for each alleged violations of D.C. Code § 7–2307, totaling an additional $2,000 in fines.

40.     The foregoing fines have not been paid and Plaintiffs challenge the validity of those fines. (The Summary Suspension and the February 7 Notice are hereinafter collectively the "Notices").[2]

41.     The Summary Suspension imposed "a non-compliance restoration fee of $100," which The Big Board had to pay "[i]n order for license to be restored." Ex. A at 4. Because payment of this fee was a requirement for reopening the restaurant, Plaintiff The Big Board had little choice but to pay. Plaintiff Drane Flannery Restaurant, LLC—on behalf of The Big Board—

---

[2] Plaintiff The Big Board previously filed an administrative challenge to these Notices of Infraction. *See* District of Columbia Office of Administrative Hearings, Case No. 2022-DOH-C21046 (NOI No: C21046). On October 11, 2022, an Administrative Law Judge dismissed the Notice of Infraction without prejudice because of a legal omission. The Administrative Law Judge stated that she did not have the authority to rule on the constitutional challenge set forth in this Complaint and further did not address the return of the restoration fee which Plaintiffs seek in this Complaint. *See* Order on Summary Adjudication dated October 11, 2022.

did so, and, on March 10, 2022, DC Health confirmed via email to The Big Board's counsel ("DC Health Emails," Exhibit C) that "Mr. Flannery paid his restoration fee." Ex. C at 2. The DC Health Emails further confirmed that "there were no food safety related issues cited on the inspection report/summary suspension report." Ex. C at 1. Instead, the Summary Suspension was strictly based on The Big Board's alleged violations of a series of emergency orders issued by the Mayor requiring business establishments to impose proof of vaccination and masking as a requirement of entry or employment. Ex. A at 1-6.

42.     On February 14, 2022, the Mayor announced that the vaccination requirement was being lifted effective February 15, and that the mask requirement was being lifted on March 1. Mayor's Order 2022-029. Although Mayor's Order 2022-029 repealed Mayor's Order 2021-148, Mayor's Order 2022-029 § IV (terminating the vaccination entry requirement at private facilities, including restaurants and bars), it expressly left at least part of Mayor's Order 2021-147 in effect, as well as Mayor's Order 2022-029 § V (providing for the "continuation of District employee, contractor, volunteer, and grantee vaccination requirements" that were "imposed and authorized by Section VI of Mayor's Order 2021-147").

## IV.    DC Health's reliance on the Mayor's unconstitutional orders violated D.C.'s Home Rule Act.

43.     DC Health's Summary Suspension and fines imposed upon The Big Board violated federal law governing the District of Columbia's authority to issue emergency regulations. Specifically, the legislation and the Mayor's orders that DC Health relied upon in suspending The Big Board's license and in fining The Big Board were the part of a series of legislative enactments issued by the D.C. Council and emergency executive orders issued by the Mayor covering a two-year period. These actions run afoul of the Home Rule Act and the United States Constitution.

44.     In making a limited exemption for legislation that was only to be effective for 90 days, Congress did not explicitly or implicitly authorize legislation by the District of Columbia or action by the D.C. executive to escape Congressional review for years on end. This renders the legislation and the Mayor's Orders upon which the DC Health suspension relied *ultra vires*, and therefore the suspension itself *ultra vires*, null, and void.

45.     The Mayor's inconsistent orders on these issues demonstrate the lack of any realistic public health threat from the alleged violations at The Big Board. Even though the Mayor deemed the vaccine mandate to be an "*emergency,*" the Mayor provided several weeks of advance notice before it was implemented, and then it lasted barely that long before it was effectively repealed. *Compare* Mayor's Order 2021-148 (dated December 22, 2021), *with* Mayor's Order 2022-029 (dated February 14, 2022). There is no evidence of actual viral transmission at The Big Board during the period of the violation.

46.     Upon information and belief, there was no actual evidence or legal authority to support the idea that basic restaurant and food safety requirements necessitated proof of vaccination of a generally transmissible disease. *See, e.g.*, *Nat'l Fed'n of Indep. Businesses v. Dept. of Labor*, 142 S. Ct. 661 (2022) (staying OSHA attempt to impose vaccine and mask requirement); *id.* at 668 (Gorsuch, J., concurring) (noting that OSHA had previously relied on emergency authority "to issue only comparatively modest rules addressing dangers uniquely prevalent inside the workplace, like asbestos and rare chemicals").

**V.     DC Health's reliance on the Mayor's unconstitutional orders evaded judicial scrutiny in violation of due process.**

47.     What's more, Plaintiffs were unable to challenge DC Health's actions in the D.C. courts for the entirety of the "emergency" period.

48.     D.C. Code § 7–2308 states that "[n]o action taken pursuant to an emergency executive order shall be subject to § 2-509," of D.C.'s Administrative Procedure Act, "until after the expiration date of the emergency executive order." D.C. Code § 7–2308.

49.     The courthouse doors were thus closed to the regulated persons and entities (including Plaintiffs) for over two years while the Mayor's public emergency declaration remained in effect. *See* Mayor's Order 2021-147 (Dec. 20, 2021) (select provisions of one of the Mayor's Orders that formed the basis for the alleged DC Health infractions against The Big Board remained in effect until the April 16, 2022 expiration of the emergency declaration extended by Mayor's Order 2022-043).

50.     Plaintiffs thus had no choice but to pay DC Health's restoration fee for the agency to lift the Summary Suspension and allow The Big Board to re-open because the courthouse doors were closed during the pendency of the emergency declaration and related orders.

51.     Plaintiffs indeed paid DC Health's $100 restoration fee during the pendency of the emergency because they were barred from challenging the underlying action during the two-year-long emergency by D.C. Code § 7–2308. *See* Ex. C at 2 (acknowledging that The Big Board paid the restoration fee in advance of the March 10, 2022 email).

52.     The legislation authorizing evergreen renewals of the Mayor's emergency powers remains in place.

53.     Although the specific emergency order in question here expired as of April 16, 2022, the precise scenario presented here where a claimant is barred from bringing a D.C. Administrative Procedure Act claim during the emergency and faces mootness considerations if he seeks to challenge the bar post-emergency is "capable of repetition, yet evading review." *See District of Columbia v. Washington Home Ownership Council, Inc.*, 415 A.2d 1349, 1350 n.

3 (D.C. 1980) (en banc) (question whether the D.C. Council had power to enact substantially identical successive emergency acts was "capable of repetition, yet evading review" and hence ripe for decision).

54.    These concerns of a repeat are real. Indeed, in August 2022 the Biden administration has declared a new health emergency for monkeypox[3] and the Mayor could issue new emergency orders regarding that disease.

55.    Also in August 2022, the Mayor ordered that unvaccinated children will not be allowed in D.C. schools, with no alternate learning opportunities.[4] There is no expiration date for this new order.

## VI.    DC Health exceeded its regulatory authority by issuing a Summary Suspension to The Big Board for alleged violations of the Mayor's Orders.

56.    D.C. Municipal Regulations outlines DC Health's regulatory authority, including when it may require a business to cease operations. D.C. Mun. Regs. tit. 25-A, § 4408.

57.    DC Health may require a licensee to cease operations if it determines "through an inspection, or examination of records or [on-site inspections related to food] the existence of any … condition[s] which endanger[] the public health, safety, or welfare." D.C. Mun. Regs. Tit. 25-A, § 4408.1(k). The regulation relates to issues unique to food operations, rather than general societal hazards and provides a list of potential violations that justify closure of such a business, including tampering with people's foods, *id.* § 4408.1(k)(9); lacking hot water, *id.* § 4408.1(k)(8); and not having a food protection manager present, *id.* § 4408.1(k)(5). *See also id.* § 4408.1(h)

---

[3] U.S. Dept' of Health & Human Services, *Biden-Harris Administration Bolsters Monkeypox Response; HHS Secretary Becerra Declares Public Health Emergency* (Aug. 4, 2022), https://www.hhs.gov/about/news/2022/08/04/biden-harris-administration-bolsters-monkeypox-response-hhs-secretary-becerra-declares-public-health-emergency.html.

[4] Anna Allen, *DC Mayor Bans Unvaccinated Children from Attending School*, Washington Free Beacon (Aug. 26, 2022, 3:20 PM), https://freebeacon.com/campus/dc-mayor-bans-unvaccinated-children-from-attending-school/.

(identifying "an infestation of vermin" as one of the "other circumstances that may endangers public health").

58.      These listed provisions address food safety issues—none relate to the existence of airborne pathogens. *See* D.C. Mun. Regs. tit. 25-A, § 4408. The failure to check vaccination status or ensure that staff wear masks does not endanger the public health in the way that the regulations intend and are not contemplated at all in the regulation as the type of circumstance that may endanger public health. Indeed, The Big Board's alleged violations of the Mayor's Orders are wholly divorced from the limited circumstances that the D.C. Municipal Regulations identify to justify closure. Accordingly, DC Health exceeded its regulatory authority by issuing the Summary Suspension and forcing the closure of The Big Board for alleged violations that do not fall within the category of potential harms that the regulations identify as justifying closure. *See, e.g.*, *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Services*, 539 F. Supp. 3d 29 (D.D.C. 2021) (invalidating the Centers for Disease Control and Prevention's eviction moratorium on the grounds that the moratorium exceeded the CDC's authority under the Public Health Service Act, 42 U.S.C. § 264); *see also Nat'l Fed'n of Indep. Businesses*, 142 S. Ct. 661.

## CLAIMS FOR RELIEF

### COUNT I
### Section 1983 Claim for D.C. Home Rule Act Violation
### (DC Health's *ultra vires* suspension of The Big Board violated federal law)
### D.C. Code § 1–204.12(1), 1–206.02(c)(1); U.S. Const., art. I, § 8; U.S. Const. amend. V; 42 U.S.C. § 1983

59.      Plaintiffs incorporate all of their prior allegations.

60.      Violations of the D.C. Home Rule Act are cognizable under Section 1983. *Bliley*, 23 F.3d at 510-11 (citing 42 U.S.C. § 1983).

61. DC Health's Summary Suspension of The Big Board's license is contrary to law and exceeds the District's statutory authority under District of Columbia's Home Rule Act and constitutional authority under Article I, Section 8 of the U.S. Constitution. The text, history, purpose, and structure of District of Columbia's Home Rule Act and the U.S. Constitution confirm that the D.C. Council's enactment of a series of emergency legislative amendments and the Mayor's use of rolling emergency executive orders thwarted Congress's reserved constitutional power under D.C. Code § 1–206.02(c)(1).

62. Simply put, it is contrary to law for DC Health to cite and penalize The Big Board in reliance of the Mayor's *ultra vires* orders and therefore the suspension itself is *ultra vires*, null, and void.

63. DC Health's extraction of a $100 restoration fee from The Big Board as a condition on the return of The Big Board's license and the restaurant's authorization to re-open violates the Fifth Amendment's Due Process Clause.

64. DC Health's imposition of multiple $1,000 fines was also contrary to law and is *ultra vires*, null and void.

65. The imposition of these fines violates the Fifth Amendment's Due Process Clause.

**COUNT II**
**Due Process Claim**
**(Deprivation of judicial review during the pendency of an "emergency" violated Due Process)**
**D.C. Code § 7–2308; U.S. Const. amend. V; 42 U.S.C. § 1983**

66. Plaintiffs incorporate all of their prior allegations.

67. D.C. Code § 7-2308's deprivation of judicial review of any "action taken pursuant to an emergency executive order … until after the expiration date of the emergency executive order" violates due process.

68.     DC Health's issuance of a Summary Suspension to The Big Board pursuant to the Mayor's "emergency" orders left Plaintiffs with no choice: pay DC Health's restoration fee or remain shuttered indefinitely without any access to judicial review during the two-year "emergency" period.

69.     DC Health's issuance of fines pursuant to the Mayor's "emergency" orders also harmed the Plaintiffs because they had no access to judicial review during the two-year "emergency" period and no ability to challenge the regulations. Accordingly, the Defendants could and did issue repeated fines for violations of the unlawful orders. That harm may arise again in the context of additional orders, such as the Mayor's new school vaccination mandate order.

70.     Additionally, the provision functionally shields the judicial review depriving statute from judicial review, which makes it capable of repetition, yet evading review.

71.     The foregoing deprivation of judicial review violates the Fifth Amendment's Due Process Clause.

**COUNT III**
**Violation of the D.C. Administrative Procedure Act**
**(DC Health exceeded its regulatory authority by issuing a Summary Suspension to The Big Board for the alleged infractions even if Big Board had committed the alleged infractions)**
**D.C. Code § 2-510; D.C. Mun. Regs. tit. 25-A, § 4408(k)**

72.     Plaintiffs incorporate all of their prior allegations.

73.     D.C.'s Administrative Procedure Act entitles any person adversely affected by an agency action to judicial review. D.C. Code § 2–510(a).

74.     The D.C. Administrative Procedure Act prohibits any agency action "[i]n excess of statutory jurisdiction, authority, or limitations." D.C. Code § 2–510(a)(3)(C).

75.     DC Health's issuance of a Summary Suspension to The Big Board for alleged violations of Mayor's Order 2021-147 (mask requirement), Mayor's Order 2021-148 (vaccination

status check requirement), and Mayor's Order 2022-007 (clarifying the vaccination status check requirement) exceed the agency's regulatory authority because the alleged violations do not endanger the public health in the way that the regulations intend. D.C. Mun. Regs. Tit. 25-A, § 4408(k).

## COUNT IV
### Declaratory Judgement pursuant to 28 U.S.C. § 2201

76.     Plaintiffs incorporate all of their prior allegations.

77.     The matters herein present a case of actual controversy within the jurisdiction of the Court.

78.     Plaintiffs seek a declaration from the Court of the rights of the Plaintiffs in the matters pled herein.

**WHEREFORE**, Plaintiffs ask this Court to enter judgment in their favor and to provide the following relief:

79.     A declaratory judgment holding that DC Health's actions in reliance on the D.C. Council's emergency legislative amendments and the Mayor's Orders are contrary to law because the repeated legislative amendments and the Mayor's extension of emergency orders for months on end violated the District of Columbia's Home Rule Act and thwarted Congress's reserved constitutional power under D.C. Code § 1–206.02(c)(1).

80.     A declaratory judgment holding that D.C. Code § 7–2308's bar on a D.C. Administrative Procedure Act claim challenging DC Health's actions "taken pursuant to an emergency executive order … until after the expiration date of the emergency executive order," D.C. Code § 7–2308, violates the Due Process Clause of the U.S. Constitution.

- 18 -

81.     A declaratory judgment holding that DC Health exceeded its regulatory authority for issuing a Summary Suspension to The Big Board as a penalty for the alleged violations of the Mayor's Orders, thus violating the D.C. Administration Procedure Act.

82.     Compensatory damages, including the $100 restoration fee, and punitive damages, all in an amount to be determined or alternatively nominal damages.

83.     All other relief to which Plaintiffs are entitled, including but not limited to attorneys' fees and costs pursuant to 42 U.S.C. § 1983 or otherwise.

Respectfully submitted,

Dated: October 13, 2022         _/s/ Frank H. Chang_

Robert Alt*
David C. Tryon*
THE BUCKEYE INSTITUTE
88 East Broad Street, Suite 1300
Columbus, Ohio 43215
(614) 224-4422
robert@buckeyeinstitute.org
d.tryon@buckeyeinstitute.org

Patrick Strawbridge*
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, Massachusetts 02109
(617) 227-0548
patrick@consovoymccarthy.com

Frank H. Chang (D.C. Bar ID 1686578)
David L. Rosenthal (D.C. Bar ID 1660535)**
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
frank@consovoymccarthy.com
david@consovoymccarthy.com

*_pro hac vice_ motion forthcoming
**Application for admission forthcoming

_Counsel for Plaintiffs_