UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ERIC J. FLANNERY, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 22-3108 (ABJ) |
| DISTRICT OF COLUMBIA DEPARTMENT OF HEALTH, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

On October 13, 2022, Eric J. Flannery and the Drane Flannery Restaurant, LLC ("Drane Flannery" or "the LLC") filed a complaint against the District of Columbia Department of Health ("D.C. Health") and its Director, LaQuandra S. Nesbitt, seeking declaratory relief and damages. Compl. [Dkt. # 1] at 1. Drane Flannery is an LLC owned by Eric Flannery, and the LLC owns a restaurant called The Big Board, which Eric Flannery operates. Compl. ¶¶ 8–9. Plaintiffs allege that the defendants unlawfully levied fines and other penalties against The Big Board for alleged violations of restrictions imposed by the D.C. government as emergency health measures at the height of the COVID-19 coronavirus pandemic. Compl. ¶¶ 1–7.

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendants moved to dismiss plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Defs.' Mot. to Dismiss Pls.' Compl. [Dkt. # 8] ("Mot.") at 1; Mem. in Supp. of Mot. [Dkt. # 8] ("Mem.") at 12. Plaintiffs opposed the motion, Pls.' Resp. in Opp. to

Mot. [Dkt. # 12] ("Opp."), and the matter is fully briefed. *See* Reply in Further Supp. of Defs.' Mot. to Dismiss Pls.' Compl. [Dkt. # 17] ("Reply").

For the reasons set forth below, the Court will **GRANT** defendants' motion to dismiss.

## BACKGROUND

On March 11, 2020, District of Columbia Mayor Muriel Bowser issued two emergency executive orders. Compl. ¶ 23. The first declared that there was a "public emergency" in the District of Columbia due to the COVID-19 coronavirus outbreak. Compl. ¶ 23, citing Mayor's Order 2020-045.[1] The second declared the presence of a "public health emergency" due to the virus. Compl. ¶ 23, citing Mayor's Order 2020-046. The orders were scheduled to remain in effect for fifteen days unless rescinded or suspended at an earlier time. Compl. ¶ 23, citing Mayor's Order 2020-045; Mayor's Order 2020-046.

On March 16, 2020, Mayor Bowser issued an order prohibiting "mass gatherings" and restricting restaurants and taverns from seating customers at tables from that date until April 1. Compl. ¶ 24, citing Mayor's Order 2020-048. The next day, the D.C. Council issued an amendment to the D.C. Code, which authorized the Mayor to extend the initial emergency executive orders that would have otherwise expired under normal procedures. *See* Compl. ¶¶ 25–26. The amendment authorized the mayor to extend those emergency orders for an additional 30 days, Compl. ¶ 26, citing D.C. Code § 7-2306(c-1) (as amended Mar. 17, 2020), and those to come. *See* Compl. ¶¶ 21, 26–27 citing D.C. Code § 7-2306(c-1) (as amended Mar. 16, 2022).

---

1   In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997); *see* Fed. R. Civ. P. 10(c).

Throughout the pandemic, the D.C. Council continued to pass emergency legislation authorizing the mayor to extend emergency executive orders, and, in December of 2021, Mayor Bowser issued two emergency orders of importance here: one imposing a mask requirement in public spaces, and one requiring customers in bars and restaurants to show proof of vaccination. *See* Compl. ¶ 3, citing Mayor's Order 2021-147, 68 D.C. Reg. 13954 (Dec. 20, 2021) (imposing an indoor mask requirement for restaurants and taverns when persons are not actively eating or drinking); Mayor's Order 2021-148, 68 D.C. Reg. 14222 (Dec. 22, 2021) (requiring proof of vaccination for customers to enter restaurants and taverns).

On February 1, 2022, D.C. Health issued a Notice of Infraction and Notice of Closure/Summary Suspension to Big Board for allegedly "permit[ing] a guest, visitor, or customer over twelve (12) years old to enter their indoor premises without displaying proof of vaccination against COVID-19" "[i]n violation of Mayor's Order 2021-148 § II(1)." Ex. A to Compl. [Dkt. # 1-1] ("Notice of Infraction") at 1. The notice additionally alleged that The Big Board was "[i]n violation of Mayor's Order 2021-147 §IV(I)" because it "did not require all persons to wear mask indoors when not actively eating or drinking." *Id.*

Plaintiffs challenge the imposition of these fines and the summary suspension of The Big Board's license. The complaint includes three causes of action:

- **Count I** alleges that defendants acted *ultra vires* by regulating through rolling emergency and temporary legislation, rather than permanent legislation, in violation of **42 U.S.C. § 1983 and the D.C. Home Rule Act**. Compl. ¶¶ 59–65.

- **Count II** alleges that D.C. Code § 7-2308, a pre-existing provision that authorizes the suspension of certain judicial review procedures required by the D.C. Administrative Procedure Act ("APA") during a declared emergency, operated to violate plaintiffs' due process rights under the **Fifth Amendment** to the U.S. Constitution. Compl. ¶¶ 66–71.

- **Count III** alleges that D.C. Health exceeded its regulatory authority by suspending The Big Board's license in violation of the **D.C. Administrative Procedure Act.** Compl. ¶¶ 72–75.

- **Count IV** seeks a declaratory judgment pursuant to 28 U.S.C. § 2201. Compl. ¶¶ 76–78. *See* Compl. ¶ 79–80.

Plaintiffs seek compensatory and punitive damages, or in the alternative nominal damages, as well as attorneys' fees and other costs associated with this action. Compl. ¶¶ 82–83.

Plaintiffs also ask the Court for a declaratory judgment holding that "DC Health's actions in reliance on the D.C. Council's emergency legislative amendments and the Mayor's Orders are contrary to law," Compl. ¶ 79; a declaratory judgment holding that "D.C. Code § 7–2308's bar on a [D.C. APA] claim challenging DC Health's actions . . . violates the Due Process Clause of the U.S. Constitution," Compl. ¶ 80; and a declaratory judgment holding that D.C. Health exceeded its regulatory authority in violation of the D.C. APA. Compl. ¶ 81.

**STANDARD OF REVIEW**

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true, and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (Rule 12(b)(6) case); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (Rule 12(b)(1) case).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ; *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ANALYSIS

**I.     Plaintiffs Have Not Pled a Cause of Action in Count I (42 U.S.C. § 1983)**

**A.     Legal Background**

**1.     The Home Rule Act**

Article I, section 8, clause 17 of the United States Constitution empowers Congress to "exercise exclusive Legislation" over the District of Columbia. U.S. Const. art. I, § 8, cl. 17. In 1973, Congress delegated much of this authority to a popularly-elected D.C. Mayor and thirteen-member Council by passing the Home Rule Act, Pub. L. No. 93-198, 87 Stat. 774 (1973) (codified as amended as D.C. Code § 1–201 *et seq.*). However, the Home Rule Act did not give the District's new government entirely free reign over local affairs.

As relevant here, the Home Rule Act contains two provisions that codify Congress's ultimate power to legislate over the District. The first grants Congress the ability to enact "legislation for the District on any subject . . . including legislation to amend or repeal any law in force in the District . . . and any act passed by the [District of Columbia] Council." D.C. Code § 1–206.01. The second grants Congress the equivalent of a veto over newly enacted local legislation, *see* D.C. Code § 1–233(c)(1), which permits Congress "a layover period of thirty statutory days to review legislation submitted by the D.C. Council." *Bliley v. Kelly*, 23 F.3d 507, 508 (D.C. Cir. 1994). "If Congress fails to pass a joint resolution of disapproval within that period, the legislation becomes law." *Id.*

**2.     Section 1983**

Section 1983, enacted as part of the Civil Rights Act of 1871, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 was passed to "interpose the federal courts between the States and the people, as guardians of the people's federal rights – to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'" *Mitchum v. Foster*, 407 U.S. 225, 242 (1972), quoting *Ex parte Virginia*, 100 U.S. 339, 346 (1879). But "it is only violations of *rights*, not *laws*, which give rise to § 1983 actions." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (emphasis in original). As a result, only "an unambiguously conferred right [may] support a cause of action brought under § 1983." *Id.* A statute that creates such a private right is generally "phrased in terms of the persons benefited," *Cannon v. Univ. of Chicago,* 441 U.S. 677, 690 n.13 (1979), and must manifest an intent "to create not just a private right but also a private remedy." *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001).

**B.  Discussion**

Plaintiffs argue that the summary suspension of The Big Board's license and imposition of fines "violated federal law governing the District of Columbia's authority to issue emergency regulations." Compl. ¶ 43. According to plaintiffs, the D.C. Council's legislating through serial, emergency regulation over a significant period of time permitted "the D.C. executive to escape Congressional review for years on end," and therefore ran afoul of the Home Rule Act and the United States Constitution.[2]  Compl. ¶¶ 43–44. Plaintiffs rely on the D.C. Circuit's opinion in

---

2   Plaintiffs conclude Count I by alleging that "it is contrary to law for DC Health to cite and penalize The Big Board in reliance of [*sic*] the Mayor's *ultra vires* orders and therefore the suspension [of The Big Board's license] itself is *ultra vires*, null and void." Compl. ¶ 62. They add, without further explanation, that the suspension and the imposition of fines violated the Due

*Bliey v. Kelly*, 23 F.3d 507 (D.C. Cir. 1994), to argue that violations of the D.C. Home Rule Act are cognizable under section 1983. Compl. ¶ 60.

In *Bliey*, four congressmen brought suit under section 1983 to challenge a series of gun control measures passed by the D.C. Council in a complex interplay of emergency, temporary, and permanent legislation. *See id.* at 509–10. The case concerned whether the congressional review period for a permanent act passed by the D.C. Council, as called for by the Home Rule Act, had been suspended when the D.C. Council later passed emergency and temporary measures that would have repealed the permanent act. *See id.* at 508. In December 1990, the D.C. Council enacted gun control legislation, which was presented to Congress for its review in January 1991. *Id.* Before the thirty-day review period under the Home Rule Act had elapsed, the Council initiated repeal measures, but those measures were ultimately frustrated by a referendum vote resulting in the legislation taking effect. *Id.* The congressmen believed that the initial, permanent act should have been resubmitted for review after the later measures were enacted. *See id.* at 510. And because resubmission had not occurred after the Council introduced emergency and temporary measures to repeal the legislation, the congressmen argued that the initial, the enacted legislation was null and void. *Id.*

The District of Columbia sought to defend itself much in the same way the government does here: by arguing that violations of the Home Rule Act are not cognizable under section 1983. *See Bliey,* 23 F.3d at 510–11; Mot. at 15–19. The D.C. Circuit disagreed, relying on the Supreme Court's decision in *Wilder v. Virginia Hospital Association*, 496 U.S. 498 (1990). *Bliey*, 23 F.3d

---

Process Clause of the Fifth Amendment, Compl. ¶ 65, and they pursue the due process theory directly in Count II.

at 510–11.  According to the Circuit, under *Wilder*, the burden was on the District "'to show by express provision or other specific evidence from the statute itself that Congress intended to foreclose' resort to enforcement under section 1983." *Id.* at 510, quoting *Wilder*, 496 U.S. at 520–21.  But the District could not meet its burden in that case because the Home Rule Act's "statutory scheme confers a right of participation on Congress that is not beyond the competence of the judiciary to enforce."  *Id.* at 510–11.  The Circuit therefore held that section 1983 was a proper vehicle for the congressmen to vindicate their alleged rights.  *Id.*

Plaintiffs cite *Bliley* to argue broadly that "[v]iolations of the D.C. Home Rule Act are cognizable under Section 1983."  Compl. ¶ 60.  But *Bliley* is distinguishable; its core holding – that the Home Rule Act "confers a right of participation on Congress" enforceable through section 1983, 23 F.3d at 511 – says nothing about whether private citizens like plaintiffs may enforce Congress's rights or otherwise possess a comparable right of their own.  Moreover, as the government notes, the Supreme Court has clarified in the years since *Bliley* that a more demanding textual analysis is warranted to assess whether a given statute confers an actionable section 1983 claim.  *Compare Bliley*, 23 F.3d at 510, *with Gonzaga*, 536 U.S. at 283 ("We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983.").

Plaintiffs point to no textual evidence to support the conclusory allegation that the right to enforce "Congress's reserved constitutional power under" the Home Rule Act falls to members of the public, as opposed to Congress itself.  *See* Compl. ¶ 61.  Indeed, the text and structure of the Home Rule Act "provide no indication that Congress intend[ed] to create new individual rights" that would empower D.C. residents like the plaintiffs to enforce Congress's prerogative of legislative review.  *Gonzaga*, 536 U.S. at 286.  To the contrary, Congress's ability to bring suit

9

and its retention of the right "to amend or repeal any law in force in the District . . . and any act passed by the [District of Columbia] Council," D.C. Code § 1–206.01, diminish the power of local citizens and their democratically elected representatives in favor of the U.S. Congress.

In short, plaintiffs fail to establish that the Home Rule Act "unambiguously confer[s]" a right upon them to sue for alleged violations of its provisions. *See Gonzaga*, 536 U.S. at 283. Because the "fail[ure] to state a cause of action under 42 U.S.C. § 1983" is "jurisdictional," *Bliley*, 23 F.3d at 510, plaintiffs' section 1983 claim in Count I is dismiss for lack of subject matter jurisdiction.

## II. Plaintiffs Do Not Have Standing to Pursue Count II (U.S. Const. Art. V, Due Process)

D.C. Code § 2-509, a provision within the D.C. Administrative Procedure Act, affords individuals a set of procedural rights when they seek to contest actions by district agencies. *See* D.C. Code § 2-509. These rights include, among others, "reasonable notice" of a hearing to challenge the agency action. *Id.* These rights may yield to exigent circumstances, though: as relevant here, D.C. Code § 7-2308 provides that "[n]o action taken pursuant to an emergency executive order . . . shall be subject to § 2-509, until after the expiration date of the emergency executive order." D.C. Code § 7-2308.

Plaintiffs were fined and The Big Board's license was suspended under regulations passed pursuant to emergency executive orders issued in response to the COVID-19 pandemic. *See* Notice of Infraction. Therefore, according to plaintiffs, section 7-2308 was in force during the declared emergency, and the effect of its statutory suspension of section 2-509 procedures rendered them "without any access to judicial review during the two-year 'emergency period'" and without the "ability to challenge the regulations" under which they were fined. Compl. ¶ 69. Plaintiffs

argue that this claimed suspension of procedures amounts to a denial of the due process guaranteed by the Fifth Amendment to the Constitution. Compl. ¶¶ 67–71.

This claim fails, though, because plaintiffs have not shown that they have standing to bring it. Standing is a necessary predicate to any exercise of federal jurisdiction; if it is lacking, then the dispute is not a proper case or controversy under the constitution, and federal courts have no subject matter jurisdiction to decide the case. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012). A plaintiff must demonstrate standing for each claim it asserts. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 185 (2000). To establish constitutional standing, a plaintiff must show: (1) that it has suffered a concrete, particularized, and actual or imminent injury-in-fact; (2) that the injury is "fairly traceable to the challenged action of the defendant"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Laidlaw Env't. Servs.*, 528 U.S. at 180-81, citing *Lujan*, 504 U.S. at 560–61. The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 561.

As evidenced by the administrative record in plaintiffs' case, the full panoply of procedural rights – including prompt judicial review – was available to plaintiffs when they in fact challenged the imposition of fines and suspension of The Big Board's license.[3] Plaintiffs filed an answer to the Notice of Infraction on March 9, 2022, and they were offered a telephonic evidentiary hearing

---

3   When assessing a motion to dismiss for lack of subject matter jurisdiction, "the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Fedlman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018). And a court need not accept allegations "insofar as they contradict exhibits to the complaint or matters subject to judicial notice." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272–73 (D.C. Cir 2018), superseded by statute on other grounds as stated in *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 215 (D.C. Cir. 2022).

less than one month later. *See* Order Scheduling Telephonic Hr'g, Ex. B to Mot. [Dkt. # 8-2] ("Hearing Order") at 1. They appeared at the hearing but declined to call any witnesses or present any documentary evidence, explaining that they were bringing a "legal, rather than factual challenge to DC Health's enforcement action." Resp. Drane Flannery's Response to Notice of Infraction, Ex. C to Mot. [Dkt. # 8-3] at 1. Plaintiffs used the hearing to set a briefing schedule for their response to the Notice of Infraction, which was completed and followed by several status conferences. *See* Order on Summ. Adjudication, Ex. D to Mot. [Dkt. # 8-3] at 2. An administrative law judge then rendered a decision, finding that the administrative court "d[id] not have the legal authority to declare the legislation and Mayoral Orders . . . unconstitutional," as plaintiffs had requested. *Id.* at 11. In short, plaintiffs were provided with notice and an opportunity to be heard, the key components of due process.

Moreover, while plaintiffs make the sweeping assertion that the courthouse doors were "closed to the regulated persons and entities . . . while the Mayor's public emergency declaration remained in effect," Compl. ¶ 49, this is an unsupported conclusion. *See Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017) (courts do not accept "legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations"). More importantly, they fail to allege any facts to show that they suffered any injury whatsoever due to any role section 7-2308 may have played during the pandemic.

Plaintiffs have not alleged that section 7-2308 was invoked at all, much less that it served to abrogate their right to defend against agency action. They have not shown that any judicially cognizable injury is "fairly traceable" to constitutionally infirm procedures. And they have not demonstrated how declaring section 7-2308 unconstitutional would redress any such injury. Therefore, the Court will dismiss Count II for lack of subject matter jurisdiction.

**III.   The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' Claim in Count III (D.C. Code § 2-510)**

Federal courts may exercise supplemental jurisdiction over any civil action in which they have original jurisdiction, provided that those claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a district court "may decline to exercise supplemental jurisdiction over a claim" when:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In determining whether to exercise supplemental jurisdiction, courts should consider "judicial economy, convenience[,] and fairness to litigants." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). If these considerations are not present, courts should "hesitate to exercise jurisdiction over state claims." *Id.*

Since the Court has dismissed both of the federal claims on the grounds that it lacks jurisdiction to hear them, it will decline to exercise supplemental jurisdiction in this case.

**IV.   The Court Does Not Have Jurisdiction Over Plaintiffs' Standalone Declaratory Judgment Act Claim in Count IV (28 U.S.C. § 2201)**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction," a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

But the Declaratory Judgment Act "is not an independent source of federal jurisdiction." *C&E Servs., Inc. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002), quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). "Rather, the availability of declaratory relief presupposes the existence of a judicially remediable right." *Id.* (internal edits omitted); *see also Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011).

The Court found that it lacks subject matter jurisdiction over plaintiffs' federal claims, and it has declined the exercise of supplemental jurisdiction. In the absence of any federal jurisdiction, plaintiffs' claim for declaratory relief in Count IV must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [Dkt. # 8] will be **GRANTED**. A separate order will issue.

*/s/ Amy B. Jackson*
AMY BERMAN JACKSON
United States District Judge

DATE: December 18, 2023